Case number 18-6285, United States of America v. Lucas Nichols. Argument not to exceed 15 minutes per side. Ms. Cawthon, you may proceed for the appellant. Good morning. I'd like to reserve three minutes of my time, thank you. All right. Lucas Nichols was sentenced to nearly 22 years in prison for possessing and receiving child pornography. He challenges today just one of six enhancements that were added as part of the calculation of his guideline range, and that is the two-level vulnerable victim adjustment, which had the effect of increasing the bottom of his guideline range by 52 months. Is Mr. Nichols' position that the relevant conduct in his case, because it includes images depicting toddlers, triggers the application of the new infant and toddler prong of subsection B4b of guideline 2G2.2, and as a result, that triggers the special instruction in the commentary to 2G2.2 that was added as part of the infant and toddler prong that precludes double counting or counting again by use of the vulnerable victim enhancement as a result of the images that were counted under the second prong of the subsection B4b. Mr. Nichols supports his position by looking at the history, context, and the plain language of Amendment 801, which is where the Commission added the infant and toddler enhancement. He also looks at the structure of the guidelines, the context of the amendment at the time it was enacted. He looks at the application rules in Guideline 1B1.1. He looks at the relevant conduct rules in 1B1.3. And he also points to the general rule in the vulnerable victim enhancement itself that says that you don't apply the vulnerable victim adjustment if the particular factor that makes the person vulnerable is already incorporated in the guideline. And what the Commission did was incorporated that in the guideline by adding the prong to 2B2.4. So what you have is, from two different directions, plainly stated that once you have infant... Excuse me. Can I ask you a question? Yes. If all the defendant possessed was an image of a child who was 10 years old in a wheelchair being sexually abused, am I right in thinking that both Section A and 3A1B would apply? If that's the only image... One image. You're getting the age enhancement? Is that what you're saying, under 2.2, the age enhancement? Yes. Plus the vulnerable victim enhancement? Yes. Yes. So they would both apply? Yes. Same defendant now possesses the same image plus an image of a 2-year-old being molested, right? Yes. So a video of a 2-year-old being molested. Yes. That person's guidelines would be less under your scenario, right? No. That person would get the four-level enhancement under subsection B4BA. So now he's gotten four additional levels for that image. Wait. I... Okay. So now he's... So if... Assume A applies to both defendants. You mean subsection B4A of the... Yes. Yes. Okay. A applies to both defendants. Okay. I'm sorry. I misunderstood. I thought we were... That's all right. My hypo. It was my fault. Okay. So A applies to both defendants because, under your definition of applies, just... Yes. If it does, someone possessing additional images of toddlers... Yes. B would apply to them, and thus, 3 would not, correct? That's correct. And so if the latter defendant possessed images of toddlers, but the former defendant did not, am I right in thinking the former defendant would have a higher guideline? So the former defendant would get the vulnerable victim enhancement... Excuse me, adjustment, the plus 2, because none of the images involved an infant or a toddler, and so we're not triggering the rule against them. Right. Okay. So... The former defendant has those same images plus one additional image of an infant or a toddler. A thousand. A thousand. So it doesn't matter how many. Right. But let's call it one since we're having a hypothetical here. I'll let you... Yes. That person does not get the two-level vulnerable victim enhancement. That was right. So I'm right in thinking that under your interpretation of the guidelines, the more culpable defendant, and I put quotes around culpable. You can... We can debate that later. The more culpable would have a lesser guidelines. So I'd like to discuss the culpable part because I think... Well, hold on. Well, okay. Lesser guidelines than the... I take that as given right now. Right. So they would not get the vulnerable victim adjustment. That is true. So they would have lesser guidelines. So their guideline range would not be the same. That is right. Wait, would it be less? It would be lower. Okay. And so how is that consistent with the structure of the guidelines where the guidelines specifically say that the goal is, right, for more culpable defendants to have higher sentences? Where does it say that the goal of the guidelines is to have higher... Well, a court should use only the enhancement that results in the greatest offense level. Where does it say that? You want me to read it to you? Yes, please. It's... Is that in the relevant conduct guideline? No, it's in 1B1. So, which you quote the one right before it. Okay. But if you... Where two or more guidelines provisions appear equally applicable, but the guidelines authorize the application of only one such provision, use the provision that results in the greater offense level. Right? So you're at Application Note 5? Exactly. And you quote 4, right, A, where it says only use the one that best describes the conduct. And so my point is that if the entire enterprise of sentencing is to sentence greater defendants that have more conduct, more egregious conduct, to higher sentences, your interpretation applies, which I think is an ingenious one and a fair one. And I'll ask the government about it. But it would create that structure. I acknowledge that that's what the note says in B. But I would take us back over to the Vulnerable Victim Adjustment in and of itself. And in the Application Note to the Vulnerable Victim Adjustment, it says if the factor that makes the person vulnerable is already incorporated in the guideline, do not apply the Vulnerable Victim Enhancement. So when you're at that point, so you can go from that direction as well and look back and say that the thing that, the factor that makes the person vulnerable, which in this case is the infant and toddler, the factors associated with that is already incorporated in the guideline, do not apply the Vulnerable Victim Enhancement. But all this terms I want you started with, and to be fair to you, you gave a perfectly reasonable way of thinking about it. But on what apply means, right? Because if apply means actually to be applied, then we know it wasn't here. If it means it just applies generically, then the second part of the comment is odd. Then don't apply, right? It is true that the word apply might have some various meanings, but it is a very common feature of the guidelines for a particular provision to apply in the abstract because the relevant conduct is present. But it doesn't actually get used in the calculation of the guideline range. Or in another way, it doesn't have the effect of increasing the range. It happens all the time. So what the commission did when it made the decision to write the guideline in this way, we have to go back to what it says. It wrote the guideline so that the infant and toddler enhancement would apply in every single case when there were images involving infant or toddlers, regardless of the facts, regardless of whether the judge could find this or that extra horrible feature to make this or that different. It applies in every case. And once the commission did that— Why can't the district court do what they did here? Why can't they pick between the two, especially when you look at the commentary that says, you know, if they're equally applicable, apply the one that will result, in essence, in a greater offense level. Does that make sense? I believe that what that particular note— I'd like to say I have seen that note. And I do think that what that note says is use the provision that results in the greater offense level. And the example it gives is about figuring the offense level within a guideline. It says if a firearm is both discharged and brandished, pick the one that has the higher offense level. We're talking about within a guideline. But here, the defendants both engaged in sadistic conduct and had images of an infant or toddler, right? So they've engaged in both. It's just like brandishing and discharging. They've engaged in both, and now you're picking the one with the greater offense level. Where am I misunderstanding that? Well, because I think— Well, the way that it works under that particular guideline is to brandish gets you one offense level, and to discharge gets you more. So what they're saying is pick the one that gets you more. Whereas in this case, what we're doing is we're not paying attention to particular conduct. You're asking—and I'm sorry to interrupt you. You're asking a district court to do this in a vacuum versus pay attention. I mean, because you started out your own words, which are perfectly fair, is context, structure, right? The district court pays attention to the entire enterprise. And my problem is you could—let's say you're right. Let's just assume you're right. Why wouldn't it be perfectly reasonable, and why shouldn't district courts say, wait a minute, this creates an unwarranted sentencing disparity? So I have to vary up to get us back to where we were. Well, I would again point to the commission's choice. The commission knew exactly what it was doing when it decided to include this second prong to a provision that is already used commonly in cases where there are images of infants and toddlers, but not in every case, and after a fact-based evaluation. So it decided to, rather than add an entirely additional— rather than do what the Fifth and the Ninth Circuits were doing, it was going to do something more conservative. It was going to do something that maybe not in every case was going to increase the range. So not applying B for B, not actually applying it, that was an error here? The district court had to do that, faced with A and B had to pick B? My answer to that would be that B for B did apply. Everyone agreed. In fact, the government itself said that the images in his collection triggered the application of that particular subsection. It was to ignore its application in order to then use those same images to get the vulnerable victim adjustment is the problem here. And Mr. Nichols' position is that because the commission was aware— this is not a situation where he's going to get a significantly lenient sentence because we don't add these four years and four months to his sentence because the person had that one additional image in our hypothetical. We're talking about a very long sentence that the commission itself already believes in many cases overstates culpability. Are there any cases where district courts have abused their discretion or whatever it would be for not picking the more appropriate guideline or the more applicable guideline? Is that an error? In a situation like this where there are two prongs to a specific offense characteristic where one is not necessarily like an increased more culpable conduct necessarily, it's just two different ways to get to the same place, I'm not aware of those cases. And the government has not cited any case where the district court was committed error because it didn't pick the right one within two equally applicable in that way. When you have a situation where it clearly applies and the rule against double counting is triggered as a result. Let me ask you one thing. Your client possessed something like 600 images, is that right? I don't have the—I'm not sure I have the— And the pre-sentence report seems to suggest that that was based upon only three images or videos. In other words, if—and there's nothing in the record of the sentencing transcript that the judge actually looked at these images or certainly not most of them. Is there a problem here because the judge really didn't look at these images? There was actually not a finding that there were factors in these images that made the victim vulnerable that were not accounted for in the guideline. That was not actually done specifically to these images. Well, nothing is said one way or the other about that and the record doesn't suggest that the sentencing judge looked at the images. At least there's nothing to that effect in the sentencing transcript. Isn't that a bit of a problem here? Well, in Mr. Nichols' view, obviously it is a problem. In fact, he did make that complaint in the district court. Really what happened here is that the court did exactly what the Fifth and the Ninth Circuits were doing as a matter of course, which is the approach that the commission rejected when it adopted the amendment that it did. So that's why there were no findings done because it was based on this idea that as soon as there are images of the victim— Well, not only no findings, there's no indication that the judge looked at the images. Setting aside the issue of whether there were findings or the fact that there were no findings, if he didn't—the judge didn't take a look at these images in connection with the sentencing or prior to the sentencing, it would seem that there would be a problem here. Well, exactly. But the way that everyone was operating was that as soon as there were images of toddlers, then the question becomes, can we use the vulnerable victim enhancement? The government says, well, the commission wants one, so therefore we've got to do it. But you're right, there was not that kind of fact-finding done, but that's what the commission's trying to avoid when it— Not only no fact-finding, no indication the judge looked. I would agree with you about that, and that's because they were basing everything on a categorical description of the images as involving toddlers. Okay, thank you. Can I ask one question? Sure. I'm sorry. You don't contest they involve toddlers, right? No. And do you contest they involve sadistic—whatever the terminology? There were images that satisfied the test under the Sixth Circuit's law with respect to that enhancement, yes. So does a district court judge have to review them to make that determination if they're both satisfied? Well, in this case, he did not say that the second prong was satisfied. He then moved over to the vulnerable victim adjustment, in which case there does have to be fact-findings made based on the actual images. And you contest that that applies, quote-unquote, in your definition. In other words, not—ignore 3 or ignore 2. Okay. Just pay attention to the 3, whatever it is. You contest that that applies. If that was the only one applied, not 2G2, whatever it is, B4, if that was the only one, you contest that it involved vulnerable victims. I contest that it involved—oh, you say I can't pay attention to 2G2.2? Yeah, because all I'm asking is, by not looking at the images, you're saying he had to look at the images to determine if 3A1, I can never remember this, B, whatever it is, applies. That would be—if we must go to the vulnerable victim adjustment and decide whether it applies based on its factors, then I would say there's been no finding that it applies. I would agree with Judge Clay about that, that the judge actually did not make a determination that the images— you would contest that. If we remanded, you would contest that, and the judge would have to go look at it. Yes. And if the judge finds that's a frivolous contest, they could revoke acceptance, correct? There is Sixth Circuit case law that supports that. Yes, but the commission has actually told that there's no— it would not be a frivolous thing to contest under the circumstances. But I hear what you're saying. You're right, but that's why our argument is much more legalistic, which is— Oh, I get it. Yeah, thank you very much. You're welcome. Good morning, Your Honors. May it please the Court. If this Court were to adopt the defendant's view, no defendant with a single image of a toddler could ever receive the Vulnerable Victim Enhancement in a child pornography case. In other words, having a side cache, more culpable conduct, as Judge DePauw pointed out, depicting infants and toddlers would foreclose the application of the Vulnerable Victim Enhancement, which seems an absurd result for more culpable conduct. That is, two separate types of child pornography to receive a lower guideline level, two levels lower, than if the defendant had only had older children and thousands of depictions of handicapped minors, sleeping minors, drugged minors. Nevertheless, because of one toddler, no Vulnerable Victim Enhancement. Can I skip you back to what we ended argument with? You certainly can. What's your response to the questions that were asked about the judge having to look at the images to apply the Vulnerable Victim Enhancement? In my opinion, the Court would, in this case, the defendant did not object to the application, to the fact that vulnerable victims were depicted. There was no objection to that part of the PSR, and they said these victims aren't vulnerable. You did object to the guideline itself applying. Correct. I agree that right now we've been talking about the legal application of the guidelines, but does a district court have an obligation to look at the images and make sure that applies? Your Honor, I don't believe a district court does, where the probation officer in the PSR finds facts that support the application of a guideline enhancement or adjustment, and the defendant does not contest that that is what is depicted in the images and videos that the defendant had in his possession. So if they object on a legal but not factual basis, the district court only has to make the legal determination and not the factual. The defendant would need to object to the factual basis for the application of the adjustment or enhancement. The court doesn't have to verify every fact in the PSR if it's not contested, right? They don't have to look through and decide that everything's correct. Correct, Your Honor, correct. Can I go back to your legal argument? Let me give you a hypothetical. If a person is driving 65 in a 55-mile-an-hour zone, okay, and never gets pulled over, happens every day, does the speed limit apply to them, even though it's not being applied? Yes. So why is this any different? The guideline applies to the defendant, even if it's not being applied, and so thus, why doesn't the commentary do exactly what your friend says? Does that make sense? Does my question make sense? I understand your question, Your Honor, and application, the word applies in application note 4 in 2G2.2 is a shorthand reminder to the courts not to apply the vulnerable victim enhancement if the court is applying the four-level enhancement on the basis of infants and toddlers only. Why wouldn't it say applied like it used to say? I mean, why'd they change it to the present tense from the past? I don't know, Your Honor. Why wouldn't they use used, which they use elsewhere in the guideline, if the district court used this section, don't apply? In other words, what I struggle with is the plain meaning of applies, right? I mean, it applies to the defendant. I mean, if you think of the word applies, like the speed limit applies to you and me whether we obey it or not. Well, in subsection A for the sadistic, masochistic, and other depictions of violence also applies, but the application note is the result of the interpretation that the defendant is advancing is an absurd result, and when you consider the application note 5 to 1B1.1, the general application principles, as Your Honor pointed out, that guides the courts to apply the one which results in the higher sentence. What about your friend's argument that I thought was very creative, which is the brandishing. She uses the brandishing example and says, look, you can tell from that guideline which one's more culpable or which one's a higher range, and so it's self-evident, whereas here you can't. They both apply four levels, so that note doesn't apply. Well, the application note says the offense level, and here the offense level is higher with the application of B4A plus the vulnerable victim enhancement. What does it mean for something to be equally applicable? As long as both of them are satisfied, they're equally applicable? Or if I had one image that satisfied A and 100 images that satisfied B, would they both be equally applicable? No. They would apply, but not equally apt to describe the defendant's conduct. What would best describe the conduct? If I had one image and then 100, then the guideline that would go to the 100 would best describe the conduct? Yes, Your Honor. That would seem to be the case. And it would be error for a judge not to pick that one then? If I counted up the images and I had one image that satisfied A and 100 and I'm deciding which of the two enhancements to go with, I've got to go with the one that had the 100 images? The difficulty in that analysis, Your Honor, is that would require a court, probation, court, counsel, to, in this case, analyze hundreds of videos and images in order to, counting up to almost 29,000 images under the guidelines, and do a balancing or a quantitative determination in order to assess which one best describes the defendant's conduct. And in Your Honor's example of one versus 100, that seems to be an easy conclusion to draw. You go with the 100. But the continuum of cases that come before the courts is not that easy. And it seems more apt to look at the guideline application notes and consider the history of this new infant and toddler enhancement and see what the result would be in part under application note 5 to 1B1.1 where it says pick the one that results in the higher offense level. To address Judge Clay's factual question, the PSR did provide that the defendant had hundreds, and I'm looking for the passage, have hundreds of images and videos that totaled under the calculation in the guidelines which gives a count of 75 images per video had a total of almost 29,000 images. So was that based on, I'm sorry, because it said, was it based on multiple videos and then multiplying it out? Yes, there were 360 videos in his Dropbox account, 20 videos on his cell phone, and 3 videos on his tablet. So Judge Clay is right that it's a multiplication that results in that number. Yes, correct, Your Honor. Four videos, videos count as 75 images under the guidelines. Unless the court has additional questions of me, I'll conclude my argument. All right. Thank you. I would like to return, if I may, to that application note 5. Can I ask you one question? Yes. Just on this factual point. So paragraph 54 of the pre-sentence report is where the vulnerable victim enhancement is applied. And I don't see an objection to the factual basis underlying that. Am I wrong? There was some objection to the decision that the images, because they were four years old, was a toddler or not a toddler. There was some objection to the age of the find or the statement by the PSR that involved a four-year-old child was questioned. There was no evidence to support that. It possessed two videos of four-year-olds being, and then a video of a four-year-old who was gagged, right? And then a picture of the toddler, and then a picture of a four-year-old performing. Yes. So all that was objected to factually, and is that preserved on appeal? I wouldn't say it was all objected to factually in the way that you're suggesting, because the argument really was that if these images do depict infant and toddlers, then the vulnerable victim adjustment doesn't. So you're not, I just want to be clear, you're not contesting on appeal that the district judge had an obligation to go review these before applying. That was no, because there was no, we didn't get to that point, not in this appeal. This appeal is about whether you can basically do what the Fifth and Ninth Circuits were doing that the commission rejected. And I'd like to go, if I may, to Application Note 5 and read it again. It says, where two or more guideline provisions appear equally applicable, but the guidelines authorize the application of only one, use the provision that results in the greater offense level. So, and you said, Judge Thapar, let's think about this not in a vacuum. So let's go to the vulnerable victim adjustment and ask ourselves, does using subprong A result in a greater offense level, because it allows us to add the two levels for the vulnerable victim adjustment? Well, we go there and we read the application note that says, if the factor that makes the person vulnerable is incorporated in the guideline, do not apply the vulnerable victim adjustment. And that's not if it is applied or if it is used. It says if it is incorporated in the guideline. The fact that the image is involved infants and toddlers is incorporated in the guideline. Therefore, even when you follow that route under Application Note 5, you still come back to language in vulnerable victim adjustment that says that you can't apply it. So it doesn't result in a greater offense level. So that note doesn't change Mr. Nichols' argument. And with that, I would just say that, really, I'm asking the court to look at the plain language that the commission used. And if it results in something that the government is unhappy with, it can go to the commission and ask for the commission to change its policy. So with that, I ask the court to vacate the sentence and remand for resentencing without the vulnerable victim adjustment. Thank you. Thank you. Thank you. And once the table is clear, the next case.